1

2

3

4

5

6          IN THE UNITED STATES DISTRICT COURT

7            FOR THE DISTRICT OF ARIZONA

8

United States of America,                )   CR-11-8022-PCT-GMS (LOA)
9                                          )
            Plaintiff,                     )   **REPORT AND RECOMMENDATION**
10                                         )
vs.                                        )
11                                         )
                                           )
12 Jasper Williams,                        )
                                           )
13          Defendant.                     )
   _____)

14

15        This case arises on the Government's May 31, 2013 Motion for Dangerousness

16 Assessment as authorized by 18 U.S.C. § 4246. (Doc. 100)  After receiving an extension to

17 respond, Defendant Jasper Williams, through his appointed counsel, opposes the motion.

   (Doc. 103) The Government's motion has been referred to the undersigned Magistrate Judge
18
   by the assigned District Judge, the Hon. G. Murray Snow, pursuant to 28 U.S.C. §
19
   636(b)(1)(A) and LRCrim 57.6(26). (Doc. 104)  Because the recommendations herein may
20
   be beyond the scope of a magistrate judge's lawful authority absent the express consent of
21
   the parties, out of an abundance of caution, this Magistrate Judge proceeds by Report and
22
   Recommendation.
23
   **I. Background**
24
          On August 15, 2010, Defendant Jasper Williams, presently 40 years of age, was
25
   arrested and charged by complaint with one count of Aggravated Sexual Abuse, in violation
26
   of 18 U.S.C. §§ 1153 and 2241(a), allegedly committed the previous day on the Navajo
27
   Indian Reservation, District of Arizona. (Doc. 1) After defense counsel was appointed,
28

1   Defendant was temporarily detained by Magistrate Judge Mark E. Aspey in Flagstaff,
2   Arizona. (Docs. 3-4)   On February 22, 2011, Defendant was indicted in Phoenix on one
3   count of Aggravated Sexual Abuse, in violation of 18 U.S.C. §§ 1153, 2241(a), and
4   2246(2)(A), allegedly occurring on August 14, 2010. (Doc. 28)

5          **A. Defendant's Mental Health History in this Case**

6          Shortly after counsel was appointed and had an opportunity to interact with
7   Defendant, defense counsel moved for a mental competency evaluation and "competency
8   restoration services." (Doc. 13) On September 14, 2010, the Flagstaff Magistrate Judge
9   granted the motion, finding reasonable cause existed the Defendant was "presently suffering
10  from a mental disease or defect rendering him mentally incompetent to the extent that he is
11  unable to understand the proceedings against him or to assist properly in his defense." (Doc.
12  18) Defendant was transferred to the custody of the Attorney General pursuant to 18 U.S.C.
13  § 4241(d) to determine whether his competency could be restored. (*Id.*)

14         Concluding in January 2011 Defendant was not competent to proceed to trial, the
15  Federal Medical Center in Butner, North Carolina ("FMC-Butner") submitted the report of
16  Dr. Robert Lucking, an FMC staff psychiatrist, indicating Defendant's competency could be
17  restored if Defendant were properly medicated and requesting a *Sell*[1] hearing to determine
18  if the involuntary administration of medication on Defendant would be appropriate. (Sealed
19  doc. 23)

20         To assist Judge Snow in his decision whether to involuntary medicate Defendant at
21  an inevitable *Sell* hearing, avoid the bed space limitations existing at FMC-Butner, and
22  reduce the delays inherent in transporting Defendant back and forth from FMC-Butner and
23  Phoenix, on April 8, 2011, the parties stipulated, and Judge Snow ordered, Defendant receive
24  a dangerousness assessment prior to Defendant's return to Phoenix for either a *Sell* hearing
25  or other hearing specified by either 18 U.S.C. § 4241(e) or § 4246(c). (Doc. 40)   In that
26  order, Judge Snow directed that, "[i]f the Director of the Federal Medical Center certifies that

27  _____

28         [1] *See Sell v. United States*, 539 U.S. 166 (2003).

in the absence of proper medication the Defendant's release would create a substantial risk of bodily injury to another person or serious damage to the property of another, he or she shall prepare and transmit the certificate as is mandated by 18 U.S.C. § 4246(a)." (*Id.* at 1-2) "Further, the Federal Medical Center shall promptly conduct and prepare the psychiatric or psychological examination and report specified in 18 U.S.C. § 4246(b)." (*Id.* at 2)

In her cover letter accompanying FMC-Butner's June 15, 2011 Forensic Dangerousness Evaluation, Complex Warden Sara M. Revell advised that "[i]nsufficient information [was] available to render an informed and accurate opinion of [Defendant's] risk of dangerousness to a reasonable degree of medical certainty[.]" (Sealed doc. 46 at 1[2]) The report informed Judge Snow that, when FMC-Butner notified defense counsel upon Defendant's arrival, defense counsel "[r]equested Mr. Williams not be interviewed as part of the risk assessment to exercise his Fifth Amendment rights[.]" (*Id.* at 3)  The report further advised that:

> The prediction of future violence is very difficult and declines in accuracy over time. Violence is situational and depends on the confluence of specific factors and events. The primary evaluator presented Mr. Williams before a risk assessment panel which was conducted on 05/09/11. . . Defense Counsel sought to preserve the Fifth Amendment rights of Mr. Williams and the Court ordered the staff of FMC Butner notify Defense Counsel if the Defendant was to be separately questioned as part of the evaluation. *As it is necessary to interview the individual undergoing the risk assessment, Defense Counsel was so notified.* The Assistant U.S. Attorney assigned to FMC Butner discussed this issue with Defense Counsel and advised the Risk Panel not to interview Mr. Williams. . . .
>
> Past history of violence: The prediction of future violence is difficult, however, *a past history of violence serves as the single best predictor.* The relative probability of dangerous behavior depends on the establishing of prior patterns of dangerous behavior and understanding of the situational specificity of the behavior. The probability of future dangerousness cannot be predicted based upon any single factor. The probability of present/future dangerousness is highest when the present/future biological, psychological, and environmental factors approximate[] the past biological, psychological and environmental factors during which dangerous behavior has occurred. The greater the similarity between past and present/future, the greater the probability that dangerous behavior will repeat itself. Mr. Williams does not have a substantial history of aggressive behavior[.]

---

[2] Warden Revell erroneously believed the Flagstaff Magistrate Judge ordered the evaluation and report on Defendant's risk of danger instead of District Judge Snow, who sits in Phoenix.

(*Id*. at 5) (emphasis added).  Significantly, FMC-Butner's risk panel concluded that, because Defendant exercised his right to remain silent and "[d]ue to the sparse amount of background information, . . . the Risk Panel was not able to formulate an opinion in regard to Mr. Williams' dangerousness if released from custody with any degree of medical certainty."[3] (*Id*. at 7)

Over the objection of Defendant's Phoenix Assistant Federal Public Defender, on July 19, 2011, Judge Snow held a contested *Sell* hearing on the Government's request to involuntarily medicate Defendant and ordered Defendant be involuntarily medicated pursuant to the protocol outlined in Judge Snow's July 20, 2011 Order. (Doc. 54) After Defendant's unsuccessful appeal of Judge Snow's ruling to the Ninth Circuit Court of Appeals, on August 15, 2012, Judge Snow lifted the stay of his *Sell* decision and ordered Defendant transferred back to FMC-Butner for further treatment and hospitalization, including the involuntarily administration of haloperidol and other medications in an attempt to safely restore Defendant's competence to stand trial. (Doc. 81)

On February 14, 2013 after the undersigned Magistrate Judge and counsel received FMC-Butner's request for additional time and treatment, sealed doc. 88, an Order to Show Cause was directed to counsel, asking why the Court should not grant FMC-Butner's request for an additional 120-day period of commitment and treatment to attempt to restore Defendant to competency. (Doc. 91)  Counsel filed timely responses. (Docs. 92-93)  Neither side objected to FMC-Butner's request that Defendant remain at its facility for an additional 120-day period of treatment, except defense counsel attached a number of conditions, which were neither approved nor rejected. (Doc. 93)

Finally, on May 29, 2013, the Court conducted a telephonic conference with counsel regarding FMC-Butner's May 24, 2013 Forensic Evaluation, opining Defendant "[W]illiams

---

[3] It is unknown whether either counsel provided FMC-Butner with Defendant's confidential Pretrial Services report, sealed doc. 8; Defendant's background records identified in Dr. Daniel C. Cady's September 7, 2010 competency evaluation, sealed doc. 16-1; or any other documents that may be relevant to a defendant's determination of dangerousness.

is not competent to stand trial and cannot be restored to competency with further treatment or education[.]" (Sealed doc. 96 at 9) Informal discussions were held whether a second dangerousness evaluation would be appropriate due to the passage of nearly two years between FMC-Butner's June 15, 2011inconclusive evaluation on dangerousness, and the May 24, 2013 report finding Defendant  cannot be restored to competency with further treatment or education. (Doc. 98)  Counsel were directed to file a written motion and response per Rule 47(a), Fed.R.Crim.P., on whether a dangerousness evaluation should now be ordered as required by the federal statutory scheme. (Doc. 99 at 1-2) (citing *United States v. v. Yazzie*, 2006 WL 2772636, at \*6 (D. Ariz. Sept. 25, 2006) (quoting *United States v. Ohnick*, 803 F.2d 1485, 1486 (9th Cir. 1986)) ("Ohnick appeared in the [district] court for a final determination on his competency to stand trial. The court found that neither was Ohnick presently competent nor was there a substantial probability that he would obtain competency in the foreseeable future. As a result, Ohnick was then subject to the provisions of 18 U.S.C. § 4246."); *United States v. Rivera-Morales*, 365 F.Supp.2d 1139 (S.D. Cal. 2005), *affirmed by United States v. Rivera-Morales*, 160 Fed. Appx. 648 (9th Cir. 2005).

**B. The Pending Motion**

The Government requests "[a]n order allowing the staff at Butner to conduct a risk assessment to determine whether 'defendant's release would create a substantial risk of bodily injury to another person or serious damage to property of another.'" (Doc. 100 at 2) Because Defendant is currently hospitalized at FMC-Butner, transportation order is not necessary.

Defendant objects to the Government's motion, raising four ambiguous and legally unsupported reasons why another dangerousness evaluation should not be ordered: 1) defense counsel "has not had adequate opportunity to independently verify whether Mr. Williams is competent to stand trial. . . and is therefore unable to agree or offer no [sic] objection to the government's request at this time[;]" 2) because FMC-Butner refused counsel's request for a video teleconference with Defendant absent a court order and this Magistrate Judge refused to order one without more information, a 30-minute phone call with

1   Defendant "to ascertain the client's level of competency . . . was not sufficient for counsel

2   to determine whether to stipulate or offer no objection to the government's motion[;]" 3)

3   FMC-Butner has previously, albeit unsuccessfully, attempted to do a dangerousness

4   evaluation and defense "[c]ounsel will continue to assert Mr. Williams' Fifth Amendment

5   rights not to speak about this or any other alleged offense[;]" and, 4) "Given that a § 4246

6   evaluation has previously been ordered and undertaken in full, and because the government

7   has shown no changed relevant circumstances that would justify another evaluation, counsel

8   objects to BOP's request for a second bite at the apple." (Doc. 103)  Other than citing the

9   relevant statute, 18 U.S.C. § 4246, defense counsel offers no authority to support his reasons

10  to oppose the Government's motion.

11          The Government's Reply[4] to Defendant's opposition to a second dangerousness

12  evaluation indicates the assigned prosecutor on this case recently communicated with legal

13  counsel at FMC-Butner, who spoke with Dr. Lucking, Defendant's psychiatrist. (*Id.* at 2)

14  Assuming a second dangerous assessment is authorized, Dr. Lucking apparently "[b]elieves

15  that he will have enough information to make a determination of dangerousness, given that

16  the facility has had two years of observation and evaluation since the last assessment was

17  completed." (*Id.*) The prosecutor acknowledges that, "[i]f [Defendant] is not found to be

18  dangerous and committable, then the charges will be dropped and he will be released." (*Id.*)

19  **II. The Federal Competency Scheme in Criminal Cases**

20          The Due Process Clause of the Fifth Amendment prohibits the Government from

21  trying a defendant who is mentally incompetent. *Cooper v. Oklahoma*, 517 U.S. 348, 354

22

23          [4] To save time in order to reach the merits of the referral, a reply was not authorized

24  in the briefing order. (Doc. 99) Without seeking leave of the Court, however, the
    Government filed a Reply. (Doc. 106) In a prompt response to the Court's June 25, 2013

25  Order to Show Cause, the assigned prosecutor apologized for her inadvertent oversight and
    advised she "[h]as spoken with defense counsel who indicated he had no objection to the

26  court considering the government's reply." (Doc. 106) Because the Reply provides current

27  information relevant to a second dangerousness evaluation, this Magistrate Judge will
    exercise its wide discretion and allow the Reply, otherwise filed timely, vacate that portion

28  of its May 30, 2013 Order precluding a reply, and, of course, accept counsel's apology.

- 6 -

1    (1996); *Pate v. Robinson*, 383 U.S. 375, 378 (1966). The test to determine a defendant's

2    competency to stand trial is set forth in *Dusky v. United States*, 362 U.S. 402 (1960) (the "test

3    must be whether [the defendant] has sufficient present ability to consult with his lawyer with

4    a reasonable degree of rational understanding - and whether he has a rational as well as

5    factual understanding of the proceedings against him."). "The government has the burden of

6    demonstrating by a preponderance of the evidence that the defendant is competent to stand

7    trial." *United States v. Hoskie*, 950 F.2d 1388, 1392 (9th Cir. 1991) (citations omitted).

8         The federal criminal code establishes a three-part statutory scheme for determining,

9    restoring, and committing a defendant, who is, or is believed to be, mentally incompetent to

10   stand trial in a criminal case. In upholding a facial constitutional challenge to 18 U.S.C. §

11   4248, the federal civil commitment statute enacted in 2006, the Supreme Court discussed the

12   congressional scheme addressing defendants believed to be mentally incompetent; "[t]he civil

13   commitment of individuals who are, or who become, mentally incompetent at any time after

14   their arrest and before the expiration of their federal sentence, §§ 4241, 4244, 4247–4248;

15   and [the scheme's] various procedural safeguards, §§ 4242, 4246, 4247." *United States v.*

16   *Comstock*, ___ U.S. ___, 130 S.Ct. 1949, 1954-55, 176 L.Ed.2d 878 (2010).

17        First, a district court must determine, by a preponderance of the evidence, whether a

18   defendant suffers from a "mental disease or defect rendering him mentally incompetent to

19   the extent that he is unable to understand the nature and consequences of the proceedings

20   against him or to assist properly in his defense." 18 U.S.C. § 4241(a) & (d); *see also United*

21   *States v. Friedman*, 366 F.3d 975, 978 (9th Cir. 2004).

22        Second, if a defendant lacks sufficient mental competency to proceed to trial, a district

23   court "[s]hall commit the defendant to the custody of the Attorney General." 18 U.S.C. §

24   4241(d). The Attorney General must then, "[h]ospitalize the defendant for treatment . . . for

25   such a reasonable period of time, not to exceed four months, as is necessary to determine

26   whether there is a substantial probability that in the foreseeable future [the defendant] will

27   attain the capacity to permit the trial to proceed[.]" 18 U.S.C. § 4241(d)(1); *see also United*

28   *States v. Loughner*, 672 F.3d 731, 766 (9th Cir. 2012).

Third, "[t]he final sentence of § 4241(d) makes this clear: 'if, at the end of the time period specified for a competency evaluation and possible restoration to competency], it is determined that the defendant's mental condition has not so improved as to permit proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248.'" *United States v. Truax*, 2008 WL 4924785, at *1 (D. Ariz. Nov. 17, 2008) (quoting 18 U.S.C. § 4241(d)), *affirmed by United States v. Truax*, 325 Fed. Appx. 591 (9th Cir. 2009), *cert. denied, Truax v. U.S.*, 131 S.Ct. 550 (2010). "This language constitutes clear authority for the Court to transport Defendant in furtherance of the purposes of § 4246(a)." *Id.* A "dangerousness hearing" is then conducted in accordance with the provisions of 18 U.S.C. §§ 4246 and 4248[5] to determine whether the defendant would pose a "substantial risk of bodily injury to another person or serious damage to property of another" if released.[6] 18 U.S.C. § 4241(d)(1); *see also United States v. Godinez-Ortiz*, 563 F.3d 1022, 1032 (9th Cir. 2009) ("[W]e conclude the district court acted within its authority in temporarily returning Godinez-Ortiz to FMC-Butner to provide the director with an opportunity to consider

---

[5] *See United States v. Martin*, 2011 WL 5220310 (D. N.M. Sept. 27, 2011) for the similarities and interplay between the provisions in 18 U.S.C. §§ 4246 and 4248.

[6] Surprisingly given the nature of the charge against Defendant, the Government has not raised § 4248 ("Civil commitment of a sexually dangerous person") in its motion. Thus, the undersigned analyzes only § 4246 ("Hospitalization of a person due for release but suffering from mental disease or defect") in this report and recommendation. Section 4248 provides for the civil commitment of a person who, *inter alia*, "[h]as been committed to the custody of the Attorney General pursuant to section 4241(d)," and is determined to be a "sexually dangerous person" within the meaning of 18 U.S.C. § 4247(a)(5). 18 U.S.C. § 4248(a). Section 4248 was enacted in July 2006 as a part of the Adam Walsh Child Protection and Safety Act. *See United States v. Turner*, 689 F.3d 1117, 1119 (9th Cir. 2012). For commitment findings pursuant to 18 U.S.C. § 4248, *see United States v. Timms*, 2012 WL 5182996 (E.D. N.C. Oct. 18, 2012). If a district court finds the Government has satisfied its burden, a defendant must be committed to a suitable facility for mental treatment until he is determined to no longer be sexually dangerous to others. *See* 18 U.S.C. § 4248(d); *Turner*, 689 F.3d at 1119-20.

1   whether to issue a dangerousness certificate pursuant to § 4246. The duration of such
2   commitments is controlled by 18 U.S.C. § 4247(b).").  A civil commitment proceeding under
3   18 U.S.C. § 4246 is completely separate from the criminal prosecution. *See United States v.*
4   *Sahhar*, 917 F.2d 1197, 1205-06 (9th Cir. 1990) (holding that the Sixth Amendment right to
5   a jury trial in "criminal prosecutions" is inapplicable to civil commitment proceedings under
6   18 U.S.C. § 4246); *United States v. Lapi*, 458 F.3d 555, 560 (7th Cir. 2006) (a hearing
7   pursuant to § 4246 "is a matter completely separate from the merits of the action - whether
8   Mr. Lapi committed the bank robbery for which he is being prosecuted[.]") (citations
9   omitted);  *U.S. v. Abregana*, 574 F. Supp.2d 1123 (D. Haw. 2008).

10          If a defendant is found to be dangerous and was initially committed pursuant to §
11   4241(d), the director of the FMC facility must "transmit [a dangerousness] certificate to the
12   clerk of the court for the district in which the person is confined [and] . . . the clerk of the
13   court that ordered the commitment." 18 U.S.C. § 4246(a). A few circuits have concluded
14   that, absent a § 4246(a) dangerousness certification, a district court lacks statutory authority
15   to conduct a dangerousness hearing. *See United States v. Bonin*, 541 F.3d 399, 400-01 (5th
16   Cir. 2008) (citing *Lapi*, 458 F.3d at 562). Upon receipt of a § 4246(a) dangerousness
17   certification, the district court must conduct a hearing to determine whether the defendant
18   "[i]s presently suffering from a mental disease or defect as a result of which his release
19   would create a substantial risk of bodily injury to another person or serious damage to
20   property of another." *Id*.  A dangerousness certificate stays the defendant's release pending
21   completion of procedures contained in 18 U.S.C. § 4246(a). *Id*. After a dangerousness
22   hearing is conducted and, upon a clear and convincing finding the defendant is too dangerous
23   to be released, the defendant is subject to indefinite commitment under 18 U.S.C. § 4246. *See*
24   18 U.S.C. § 4246(a), (d); *United States v. Rivera-Morales*, 365 F. Supp.2d 1139, 1141-42
25   (S.D. Cal. 2005), *affirmed by United States v. Rivera-Morales*, 160 Fed. Appx. 648 (9th Cir.
26   2005); *Godinez-Ortiz*, 563 F.3d at 1031-32.

27          If a defendant is found incompetent, not likely to attain competency in the reasonably
28   foreseeable future, and not dangerous within the meaning of 18 U.S.C. § 4246, the Bail

Reform Act may not apply and that defendant may be released under § 4246(e).[7] *See* 18 U.S.C. § 4246(e); *United States v. Chaudhry*, 630 F.3d 875, 878 (9th Cir. 2009) (finding no basis for appellate court to exercise jurisdiction over government's appeal where defendant was found incompetent, not restorable, not dangerous, and because an appeal was pending, noting the district court "[s]et conditions on Chaudhry's release, apparently releasing him under 18 U.S.C. § 3143 (rather than § 4246).")); *United States v. Magassouba*, 544 F.3d 387, 406 (2d Cir. 2008); *United States v. West*, 2007 WL 1851305, at *1 (D. Colo. June 26, 2007) ("[S]ince Defendant was incompetent but was not found to be dangerous within the meaning of § 4246, I found that Defendant must be released from custody. Accordingly, I granted Defendant's Motion for Forthwith Release from Custody.").

## III. The Fifth Amendment

"The Fifth Amendment can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory and it protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used."[8] *United States v. Bodwell*, 66 F.3d 1000, 1001 (9th Cir. 1995) (quoting *Kastigar v. United States*, 406 U.S. 441, 444-45 (1972) (internal quotation marks omitted). It is also well-established in Fifth Amendment jurisprudence that "[t]he Fifth Amendment prohibits only compelled testimony that is incriminating." *Hiibel v. Sixth Judicial Dist. Court of Nevada*, 542 U.S. 177, 189 (2004). "To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled."

---

[7] Other district courts have criticized the lack of clarity and direction in 18 U.S.C. § 4246. *See United States v. Acosta-Soberanis*, 2012 WL 1801978, at *17 (N.D. Ga. April 3, 2012) (citing *United States v. Jackson*, 2009 WL 691973, at *3 (E.D. Pa. March 16, 2009) ("[S]everal courts have recognized that § 4246 contains troubling gaps in the statutory scheme.") (alteration added) (citing cases) (internal quotation marks omitted); *United States v. Wheeler*, 744 F. Supp. 633, 636 (E.D. Pa. 1990) (noting the "black hole" of legislation in § 4246)).

[8] The Fifth Amendment to the United States Constitution provides, in pertinent part, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V.

*Id.* "The standard for determining whether a claim of privilege is justified is whether the claimant is confronted by substantial and real, and not merely trifling or imaginary, hazards of incrimination." *United States v. Vavages*, 151 F.3d 1185, 1192 (9th Cir. 1998) (quoting *United States v. Rubio-Topete*, 999 F.2d 1334, 1338 (9th Cir. 1993)) (citation and internal quotation marks omitted). Although a dangerousness evaluation under § 4246 may be civil in nature, a defendant may properly assert his Fifth Amendment privilege against self-incrimination in such a hearing. In *Allen v. Illinois*, 478 U.S. 364, 374-75 (1986), however, the Supreme Court held a state could use an alleged sexually violent person's refusal to talk to the state's doctors against him because the proceeding to determine whether a detainee under an Illinois statute was a sexually violent person was not criminal in nature.

Recently, in the context of a pretrial competency hearing pursuant to 18 U.S.C. § 4241, the Ninth Circuit addressed the concern that, if a defendant were to testify at the hearing, the defendant's testimony may later be used against him by the Government - "a concern we take seriously." *United States v. Gillenwater*, ___ F.3d ___, 2013 WL 2930502, at *12 (9th Cir. 2013). The Ninth Circuit acknowledged it "[h]as supervisory authority 'to mandate procedures deemed desirable from the viewpoint of sound judicial practice although in nowise commanded by statute or by the Constitution.'" *Id.* (citation omitted). The court then instructed the district court in *Gillenwater* that:

> if another competency hearing is held at which [the defendant] testifies, the district court [should] enter an order barring the use of such testimony at [the defendant's] trial except, if otherwise permissible, to impeach [the defendant] were he to testify at trial - as is the rule in the context of a defendant's testimony at a suppression hearing.

*Id.* (citing *United States v. Beltran-Gutierrez*, 19 F.3d 1287, 1291 (9th Cir. 1994) (holding that consistent with the Fourth and Fifth Amendments, a defendant's testimony at a suppression hearing could be used at trial only to impeach the defendant and not to prove his guilt) (footnote in quotation omitted)). Footnote 14, however, is instructive:

> We express no view as to whether such an instruction is required by either the Constitution or statute. However, we are of the view, pursuant to our supervisory power, that *such an order should be entered in any case where a criminal*

1
2
3

*defendant wishes to testify at his competency hearing*, in order that such right to testify shall not have a negative consequence in any subsequent trial where he does not testify or a negative consequence, other than impeachment, in a subsequent trial where he does testify.

4   *Id*. (emphasis added).

5   In light of the Ninth Circuit's instruction in *Gillenwater* regarding a defendant's Fifth
6   Amendment privilege in a closely-related competency issue in a criminal case, this
7   Magistrate Judge will recommend a similar order be entered if a dangerousness hearing is
8   held in the case *sub judice*.

9   **IV. Discussion**

10   Due to Defendant's presently undisputed, non-restorable mental incompetence and
11   despite his significant time and treatment at FMC-Butner, there are few alternatives the
12   District Court of Arizona has at this time. Absent a Government dismissal motion, a
13   dangerousness evaluation pursuant to 18 U.S.C. § 4246 is mandated by the statute itself and
14   controlling case law. *See* § 4241(d) ("[I]f, at the end of the time period specified, it is
15   determined that the defendant's mental condition has not so improved as to permit
16   proceedings to go forward, the defendant is subject to the provisions of sections 4246 and
17   4248."); *Truax*, 2008 WL 4924785, at *1. No doubt, Defendant would prefer the indictment
18   be dismissed and he be released.

19   If defense counsel were interested in verifying whether Defendant is presently
20   mentally incompetent and, of course, assuming counsel's viewing and speaking with his
21   client again since the July 19, 2011 *Sell* hearing would confirm it, nothing has precluded
22   defense counsel from traveling to North Carolina to meet with his client in person. Defense
23   counsel has apparently refused to travel to North Carolina to personally visit his client due
24   to, perhaps, budgetary issues, or failed to associate the Federal Public Defender's Office in
25   the Eastern District of North Carolina, the judicial district in which FMC-Butner is located.
26   These failures should not impede the congressional statutory mechanism designed to secure
27   a judicial determination of a criminal defendant's competency, thereby protecting
28   Defendant's fair trial rights and the integrity of judicial proceedings; risk the safety of the

public by releasing a mentally incompetent, but possibly dangerous, person back into society after what has been described as a "brutal sexual assault," doc. 106 at 2; and further frustrate the fair and orderly resolution of this challenging case.

Defendant has offered no legal authority that a district court may not order a second dangerousness evaluation, where, as here, the first one failed because the risk panel was unable to render an opinion because Defendant exercised his right to remain silent and was provided a "sparse amount of background information" on him. (Sealed doc. 46 at 7)

While this appears to be an issue of first impression in the Ninth Circuit, there is authority that, when it is appropriate to do so, a district court may authorize more than one psychological or psychiatric report under 18 U.S.C. § 4246. *See* 18 U.S.C. § 4246(b); *Chaudhry*, 630 F.3d at 879 (in *dicta* stating, "[a]s long as the district court and the government choose to not dismiss the indictment against Chaudhry, the government may continue to file requests for Chaudhry's competency to be reviewed.") (citing, *inter alia*, 18 U.S.C. § 4241(a) and *Lapi*, 458 F.3d at 561 (indicating "the district court can reevaluate a defendant's competency . . . under 18 U.S.C. § 4241 at any time so long as a federal indictment remains pending[.]")); *United States v. Martinez-Haro*, 645 F.3d 1228, 1233 (10th Cir. 2011); *United States v. Arendas*, 2011 WL 3477021, at *2 (D. Utah Aug. 9, 2011) (finding it appropriate to order a defendant's second competency evaluation because "since the time of the first competency hearing, the Court has received personal correspondence from Defendant that has given the Court reason to question its original finding of competency."); *United States v. Hardy*, 770 F.Supp.2d 410, 411 (D. Me. 2011) (holding a district court "[o]rder additional psychiatric or psychological examinations and reports as necessary before determining whether civil commitment is appropriate."). Of course, the district court's discretion to order a subsequent evaluation is not limitless. *See United States v. Locklear*, 483 Fed. Appx. 842, 846-47 (4th Cir. 2012) (reversing district court's order for a third evaluation "because [the district court] [was] not of the same opinion as the doctors charged with making [the dangerousness] determination [and] was 'not comfortable' with releasing Locklear right away and . . . did not 'accept the Butner findings.'"); *United States*

*v. Martin*, 2011 WL 5220310, at *15 (D. N.M. Sept. 27, 2011) (recognizing it has the authority to order a second psychological or psychiatric report under 18 U.S.C. § 4246, but refusing to do so in this case.)

In *Martinez-Haro*, the district court ordered a second competency evaluation, on motion from the Government, after an initial evaluation found the defendant to be incompetent to stand trial. 645 F.3d at 1229. On an interlocutory appeal, the defendant argued that 18 U.S.C. § 4241(b) only authorizes the district court to order a single competency examination. In rejecting defendant's arguments, the Tenth Circuit wrote:

> *[T]he statute authorizes district courts to order competency hearings as need be.* The statute does not contain any language restricting a district court from ordering multiple hearings. The statute does not state that the court may order only one psychiatric or psychological examination. And the statute does not state that the court may order just a single psychiatric or psychological examination. While the statute does not explicitly address the issue raised by Martinez-Haro, it does state that "if the court finds it appropriate, [then the court can order an examination] by more than one such examiner." 18 U.S.C. § 4247(b). Nothing in this language limits the second examiner to the initial examination of the defendant nor does the language restrict the ability of the court to order a second examination after the initial examination. Therefore, we refuse to read into the statute's language the restriction suggested by Martinez-Haro. Instead we read the statute to authorize a district court to order a second competency hearing *when appropriate*.

*Id.* at 1233 (emphasis added). The district court ordered the second evaluation because the first evaluation specifically recommended further testing in Spanish and the examining doctor "expressed a willingness to revise her conclusion based on further testing." *Id.* ("we conclude that in this case it would be prudent for the district court to order an additional competency examination.") The Tenth Circuit held these were "legitimate reasons for the district court to order a second competency examination." *Id.*

Finally, defense counsel's assertion that Defendant will continue to assert Fifth Amendment rights is an inadequate basis to deny a second dangerousness evaluation. After the Ninth Circuit's guidance in *Gillenwater* and if an order is entered barring the use of any admissions given by Defendant as a part of a second dangerousness evaluation, the concern for asserting his Fifth Amendment privilege is significantly reduced. Moreover, even if

1   Defendant elects to assert the privilege again, a second risk panel may have, as Dr. Lucking

2   has apparently surmised, sufficient information to make a determination of dangerousness,

3   given that FMC-Butner has had over two years to observe and evaluate the Defendant since

4   the last assessment was completed and signed on June 15, 2011. (Sealed doc. 46 at 2)

5   **V. Conclusion**

6          In light of the very serious allegations in the indictment; the prior medical findings

7   that Defendant is neither mentally competent nor restorable to competency with further

8   treatment or education; the mandatory language in 18 U.S.C. § 4246 that a dangerousness

9   evaluation be conducted; the inability of FMC-Butner to reach any conclusion on the

10  dangerousness issue as explained herein; and the extensive time FMC-Butner has had to

11  observe, treat, and evaluate Defendant, this Magistrate Judge finds good cause exists to grant

12  the Government's motion and recommend a second dangerousness evaluation. This is clearly

13  not a scenario where the Government or a district court wants "a second bite at the apple,"

14  as defense counsel has described, because either did not agree on the first dangerousness

15  evaluation. For the reasons explained herein, the first risk panel was simply unable to

16  formulate an opinion regarding Defendant's dangerousness with any degree of medical

17  certainty if he were released from custody.

18         Based on the foregoing,

19         **IT IS RECOMMENDED** as follows:

20         1. the Government's Motion for Dangerousness Assessment, doc. 100, be

21  **GRANTED**. Defendant shall remain committed to the custody of the Attorney General until

22  further order of the Court, pending Defendant's dangerousness assessment and any

23  subsequent dangerousness or other hearing in the District Court of Arizona. FMC-Butner

24  must promptly perform a dangerousness assessment on Defendant as required by 18 U.S.C.

25  § 4246(a), provide a written psychiatric or psychological report directly to the Hon. G.

26  Murray Snow, United States District Judge, and counsel of record in this case, and file the

27  original report under seal. If Defendant is found to be dangerous, the director shall transmit

28  a certificate to the Clerk of Court for the District Court of Arizona and otherwise comply

with 18 U.S.C. § 4246;

2. Defendant be found mentally incompetent to proceed to trial and there is no substantial likelihood Defendant will obtain competence in the foreseeable future;

3. Defendant cannot be restored to competency with further treatment or education in the foreseeable future;

4. Any admissions by Defendant against his penal interests obtained during, and as a part of, the second dangerousness evaluation ordered herein be barred from use at Defendant's trial in this case and any other criminal trial except, if otherwise permissible, to impeach Defendant if he were to testify at trial; and

5. Both counsel promptly provide FMC-Butner with all of Defendant's relevant mental healthcare records not currently in FMC-Butner's possession, police reports, and other documents, including the sealed Pretrial Services report, doc. 8, related solely to the issue of dangerousness to assist FMC-Butner in conducting a dangerousness evaluation of Defendant pursuant to 18 U.S.C. § 4246.

**IT IS ORDERED** that the portion of the Magistrate Judge's May 30, 2013 Order precluding a Reply ("A Reply is not permitted.") is **VACATED**, *nunc pro tunc*, to May 30, 2013.

Dated this 27th day of June, 2013.

Lawrence O. Anderson
United States Magistrate Judge